**TY, INC., Plaintiff–Appellee,**

v.

**GMA ACCESSORIES, INC. and Paul HARRIS, Defendants–Appellants.**

**Nos. 97–2153, 97–2356.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 5, 1997.

Decided Dec. 19, 1997.

James P. White (argued), Welsh & Katz, Chicago, IL, for Plaintiff–Appellee.

Marc S. Cooperman, Charles W. Shifley (argued), Banner & Witcoff, Chicago, IL, John P. Bostany, Bostany Law Firm, New York City, for Defendants–Appellants.

Before POSNER, Chief Judge, and BAUER and FLAUM, Circuit Judges.

POSNER, Chief Judge.

Ty, the manufacturer of the popular "Beanie Babies" line of stuffed animals, has obtained a preliminary injunction under the Copyright Act against the sale by GMA (and also a retailer, but we can disregard that aspect of the injunction) of "Preston the Pig" and "Louie the Cow." These are bean-bag animals manufactured by GMA that Ty contends are copies of its copyrighted pig ("Squealer") and cow ("Daisy"). Ty began selling the "Beanie Babies" line, including Squealer, in 1993, and it was the popularity of the line that induced GMA to bring out its own line of bean-bag stuffed animals three years later. GMA does not contest the part of the injunction that enjoins the sale of Louie, but asks us on a variety of grounds to vacate the other part, the part that enjoins it from selling Preston.

We have appended to our opinion five pictures found in the appellate record. The first shows Squealer (the darker pig, actually pink) and Preston (white). The second is a picture of two real pigs. The third and fourth are different views of the design for Preston that Janet Salmon submitted to GMA several months before Preston went into production. The fifth is a picture of the two bean-bag cows; they are nearly identical. A glance at the first picture shows a striking similarity between the two bean-bag pigs as well. The photograph was supplied by GMA and actually understates the similarity (the animals themselves are part of the record). The "real" Preston is the same length as Squealer and has a virtually identical snout. The difference in the lengths of the two animals in the picture is a trick of the camera. The difference in snouts results from the fact that the pictured Preston was a manufacturing botch. And GMA put a ribbon around the neck of the Preston in the picture, but the Preston that it sells doesn't have a ribbon.

The two pigs are so nearly identical that if the second is a copy of the first, the second clearly infringes Ty's copyright. But identity is not infringement. The Copyright Act forbids only copying; if independent creation results in an identical work, the creator of that work is free to sell it. *Selle v. Gibb*, 741 F.2d 896, 901 (7th Cir.1984); *Grubb v. KMS Patriots, L.P.*, 88 F.3d 1, 3 (1st Cir. 1996). The practical basis for this rule is that unlike the case of patents and trademarks, the creator of an expressive work—an author or sculptor or composer—cannot canvass the entire universe of copyrighted works to discover whether his poem or song or, as in this case, "soft sculpture" is identical to some work in which copyright subsists, especially since unpublished, unregistered works are copyrightable. 17 U.S.C. § 104(a); *Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 548, 105 S.Ct. 2218, 2224, 85 L.Ed.2d 588 (1985). But identity can be powerful evidence of copying. *Gaste v. Kaiserman*, 863 F.2d 1061, 1068 (2d Cir. 1988); *Ferguson v. National Broadcasting Co.*, 584 F.2d 111 (5th Cir.1978). The more a work is both like an already copyrighted work *and*—for this is equally important—unlike anything that is in the public domain, the less likely it is to be an independent creation. As is generally true in the law, circumstantial evidence—evidence merely probabilistic rather than certain—can confer sufficient confidence on an inference, here of copying, to warrant a legal finding.

The issue of copying can be broken down into two subissues. The first is whether the alleged copier had access to the work

that he is claimed to have copied; the second is whether, if so, he used his access to copy. *CMM Cable Rep, Inc. v. Ocean Coast Properties, Inc.,* 97 F.3d 1504, 1513 (1st Cir.1996); *Fisher–Price, Inc. v. Well–Made Toy Mfg. Corp.,* 25 F.3d 119, 123 (2d Cir.1994). It might seem that access could not be an issue where, as in this case, the allegedly copied work is a mass-produced consumer product purchasable for $5. But we shall see that GMA has attempted to make an issue of access.

Obviously, access does not entail copying. An eyewitness might have seen the defendant buy the copyrighted work; this would be proof of access, but not of copying. But copying entails access. If, therefore, two works are so similar as to make it highly probable that the later one is a copy of the earlier one, the issue of access need not be addressed separately, since if the later work was a copy its creator must have had access to the original. *Selle v. Gibb, supra,* 741 F.2d at 901; *Gaste v. Kaiserman, supra,* 863 F.2d at 1068; *Ferguson v. National Broadcasting Co., supra.* Of course the inference of access, and hence of copying, could be rebutted by proof that the creator of the later work could not have seen the earlier one or (an alternative mode of access) a copy of the earlier one. But unlike the court in *Towler v. Sayles,* 76 F.3d 579, 584–85 (4th Cir.1996), and the authors of 4 *Nimmer on Copyright* § 13.02[B], pp. 13–24 to 13–25 (1997), we do not read our decision in *Selle* to hold or imply, in conflict with the *Gaste* decision, that no matter how closely the works resemble each other, the plaintiff must produce some (other) evidence of access. He must produce evidence of access, all right—but, as we have just said, and as is explicit in *Selle* itself, see 741 F.2d at 901, a similarity that is so close as to be highly unlikely to have been an accident of independent creation *is* evidence of access.

What troubled us in *Selle* but is not a factor here is that two works may be strikingly similar—may in fact be identical—not because one is copied from the other but because both are copies of the same thing in the public domain. In such a case—imagine two people photographing Niagara Falls

from the same place at the same time of the day and year and in identical weather—there is no inference of access to anything but the public domain, and, equally, no inference of copying from a copyrighted work. *Id.* at 904; *Gracen v. Bradford Exchange,* 698 F.2d 300, 304 (7th Cir.1983); *Warren Publishing, Inc. v. Microdos Data Corp.,* 115 F.3d 1509, 1516 n. 19 (11th Cir.1997); *Key Publications, Inc. v. Chinatown Today Publishing Enterprises, Inc.,* 945 F.2d 509, 514 (2d Cir.1991). A similarity may be striking without being suspicious.

But here it is both. GMA's pig is strikingly similar to Ty's pig but not to anything in the public domain—a real pig, for example, which is why we have included in our appendix a photograph of real pigs. The parties' bean-bag pigs bear little resemblance to real pigs even if we overlook the striking anatomical anomaly of Preston—he has three toes, whereas real pigs have cloven hooves. We can imagine an argument that the technology of manufacturing bean-bag animals somehow prevents the manufacturer from imitating a real pig. But anyone even slightly familiar with stuffed animals knows that there are many lifelike stuffed pigs on the market, and whether they are stuffed with beans or other materials does not significantly affect their verisimilitude—though here we must emphasize that any factual assertions in this opinion should be treated as tentative, since the case is before us on an appeal from the abbreviated record of a preliminary-injunction proceeding and a full trial may cast the facts in a different light.

Real pigs are not the only pigs in the public domain. But GMA has not pointed to any fictional pig in the public domain that Preston resembles. Preston resembles only Squealer, and resembles him so closely as to warrant an inference that GMA copied Squealer. In rebuttal all that GMA presented was the affidavit of the designer, Salmon, who swears, we must assume truthfully, that she never looked at a Squealer before submitting her design. But it is not her design drawing that is alleged to infringe the copyright on Squealer; it is the manufactured Preston, the soft sculpture itself, which, as a comparison of the first with the third and

fourth pictures in the appendix reveals, is much more like Squealer than Salmon's drawing is. And remember that the manufactured Preston *in the photograph* is a sport, with its stubby snout and its ribbon. Interestingly, these are features of Salmon's drawing but not of the production-model Preston, suggesting design intervention between Salmon's submission and actual production.

It is true that only a few months elapsed between Salmon's submission of the drawing to GMA and the production of Preston. But the record is silent on how long it would have taken to modify her design to make it more like Squealer. For all we know, it might have been done in hours—by someone who had bought a Squealer. The Beanie Babies are immensely popular. They are also, it is true, sometimes hard to find (though not this Christmas, in Chicago at any rate). Ty's practice, apparently, is to create a shortage (that is, to price its bean-bag animals below the market-clearing price) in order to excite the market. But it is unbelievable that a substantial company like GMA which is in the same line of business as Ty could not have located and purchased a Squealer if it wanted to copy it. A glance at the last picture in the appendix shows an identity between Louie the Cow and Ty's Daisy that is so complete (and also not explainable by reference to resemblance to a real cow or other public domain figure) as to compel an inference of copying. If GMA thus must have had access to Daisy, it is probable, quite apart from any inference from the evidence of similarity, that it had access to Squealer as well.

This discussion shows how the tension between *Gaste* and *Selle* can be resolved and the true relation between similarity and access expressed. Access (and copying) may be inferred when two works are so similar to each other and not to anything in the public domain that it is likely that the creator of the second work copied the first, but the inference can be rebutted by disproving access or otherwise showing independent creation—and in this connection GMA complains that the district judge refused to conduct an evidentiary hearing at which it might have presented evidence of independent creation. If genuine issues of material fact are created by the response to a motion for a preliminary injunction, an evidentiary hearing is indeed required. *Medeco Security Locks, Inc. v. Swiderek,* 680 F.2d 37, 38 (7th Cir.1981) (per curiam); *Elliott v. Kiesewetter,* 98 F.3d 47, 53 (3d Cir.1996); *Schulz v. Williams,* 38 F.3d 657 (2d Cir.1994) (per curiam). But as in any case in which a party seeks an evidentiary hearing, he must be able to persuade the court that the issue is indeed genuine and material and so a hearing would be productive—he must show in other words that he has and intends to introduce evidence that if believed will so weaken the moving party's case as to affect the judge's decision on whether to issue an injunction. Here is where GMA falters. The only evidence that it seeks to present is the designer's oral testimony in support of the claim of independent creation. Her testimony would presumably have duplicated her affidavit, which was already in evidence; at least, GMA has not indicated what her testimony would add to her affidavit. Affidavits are ordinarily inadmissible at trials but they are fully admissible in summary proceedings, including preliminary-injunction proceedings. *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.,* 51 F.3d 982, 985 (11th Cir.1995); *Asseo v. Pan American Grain Co.,* 805 F.2d 23, 26 (1st Cir.1986). So the evidence that GMA wants to put before the district judge was before him when he ruled.

Even if fully credited, the affidavit does not establish the independent creation of Preston but merely the independent creation of a drawing that resembles Squealer much less than the production model of Preston does. This is not to deny that the affidavit is *some* evidence of independent creation of Preston, so it was relevant evidence. No one doubts that; and since it was already part of the evidentiary record, having its contents repeated orally would not have assisted the district judge.

But this is on the assumption that the judge credited the affidavit. If he did not even though it was not contradicted—if, for example, he was laboring under the misapprehension that affidavits are inadmissible in

preliminary-injunction proceedings—he would have committed an error that would have been cured by his allowing Salmon to testify in person, and his not allowing her to do so would therefore be a ground for appeal. But there is no basis for imputing such an error to the district judge. As we read his opinion, he credited Salmon's affidavit and merely concluded, as do we, that it was only weak evidence of independent creation. Silence can be pregnant; the absence of any evidence of how the designer's drawing was translated into the Squealer-resembling production model, combined with the similarity of that model to Squealer (and to nothing in the public domain) and with GMA's obviously having copied Ty's cow, overbore the weak evidence of the affidavit.

 So, on the record compiled in the preliminary-injunction proceedings, Ty has indeed a strong case. But that is not the end of our inquiry. The granting of a preliminary injunction depends on proof of irreparable harm if the injunction is withheld as well as on the likelihood of success on the merits when the case is fully tried. *In re Forty-Eight Insulations, Inc.,* 115 F.3d 1294, 1300 (7th Cir.1997); *Hawksbill Sea Turtle v. Federal Emergency Management Agency,* 126 F.3d 461, 478 n. 13 (3d Cir.1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 58 (2d Cir. 1996). It is true that the stronger the case on the merits, the less irreparable harm must be shown. *Ayres v. City of Chicago,* 125 F.3d 1010, 1013 (7th Cir.1997); *American Hospital Supply Corp. v. Hospital Products Ltd.,* 780 F.2d 589, 593–94 (7th Cir.1985); *EEOC v. Astra USA, Inc.,* 94 F.3d 738, 743–44 (1st Cir.1996); cf. *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog,* 945 F.2d 150, 153 (6th Cir.1991). If the likelihood of a substantive mistake—relief granted without an actual infringement of the plaintiff's rights—is slight, the fact that the plaintiff may not have a compelling need for interim relief is not a great worry; for if his rights really were infringed, he is entitled to an injunction without demonstrating irreparable harm, which is required only for *preliminary* injunctive relief. *Walgreen Co. v. Sara Creek Property Co.,* 966 F.2d 273, 275 (7th Cir.1992). But a plaintiff who cannot show any irreparable harm at all from the withholding of a preliminary injunction is not entitled to the injunction however strong his case on the merits, for he has no need for preliminary relief in such a case, no need therefore to short circuit the ordinary processes of the law. GMA argues that Ty has in fact suffered no irreparable harm.

 It relies primarily on a short-term promotional license that Ty granted McDonald's to give away miniature Beanie Babies ("Teenie Beanie Babies") to McDonald's customers in their meal packets. This shows, says GMA, that Ty does not insist on having the exclusive right to distribute Beanie Babies to the consuming public, that it is willing to "sell" (or rent) that right, and hence that it would be fully compensated for any losses stemming from GMA's copying simply by an award of damages measured either by GMA's profits on its sales of Preston or by the reduction in Ty's profits caused by the diversion of customers to the look-alike pig (whichever is greater). These are indeed allowable measures of damages, 17 U.S.C. § 504(b); *Taylor v. Meirick,* 712 F.2d 1112, 1120 (7th Cir.1983); *Walker v. Forbes Inc.,* 28 F.3d 409, 412 (4th Cir.1994), but they do not demonstrate an absence of irreparable harm.

GMA presses on us a line of cases that hold that a patentee's action in licensing his patent may disentitle him to a preliminary injunction against an infringer by showing that he is willing to surrender his exclusive rights in exchange for money. *High Tech Medical Instrumentation, Inc. v. New Image Industries, Inc.,* 49 F.3d 1551, 1557 (Fed.Cir. 1995); *Illinois Tool Works, Inc. v. Grip–Pak, Inc.,* 906 F.2d 679, 683 (Fed.Cir.1990); *T.J. Smith & Nephew Ltd. v. Consolidated Medical Equipment, Inc.,* 821 F.2d 646, 648 (Fed. Cir.1987). No copyright case that we have found so holds, but we may assume without having to decide that the principle would apply to copyrights as well as to patents. That cannot help GMA, which argues, what no case holds, that the mere existence of a license, irrespective of its terms, precludes the grant of a preliminary injunction. By limiting the remedial rights of owners of intellectual property, such a rule would gra-

tuitously impair the incentive to license such property, even though such licensing is common and therefore presumptively efficient. And, as the facts of this case show, it would be a silly rule. The license to McDonald's was promotional in character and involved not the Beanie Babies themselves but a substitute product; and Squealer wasn't even among the Beanie Babies covered by the license. The existence of such a license, unlike a general license offered to all comers, does not demonstrate a decision to relinquish all control over the distribution of the product in exchange for a readily computable fee.

We may thus assume that if Ty licensed all who want to make Beanie Babies, appropriate compensatory relief in this case would be to make GMA pay for the license at Ty's standard rate retroactive to the date on which GMA began selling Preston. *Kleier Advertising, Inc. v. Premier Pontiac, Inc.*, 921 F.2d 1036, 1039–40 (10th Cir.1990). The opposite is truer. Ty wants to limit the distribution of Beanie Babies, and has succeeded in doing so, as shown by the existence of a secondary market in the Babies in which prices as high as $2,200 for a Beanie Baby ("Peanuts the Elephant") have been reported. The profits in the secondary market go to the purchasers of the Babies, not to Ty. Why Ty wants to enrich its customers and perhaps its retailers is unclear—perhaps to encourage adult purchases of the product (as a collectible), perhaps to incite children to pester their parents for it out of fear of not keeping up with their playmates—but is not our business. It is germane only as showing that GMA's infringement is not only depriving Ty of the income on some number of pigs but also disrupting its scheme of distribution. The harm to its marketing plan cannot readily be monetized and so is appropriately described as irreparable. *Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 37–38 (2d Cir.1995); *Lakedreams v. Taylor*, 932 F.2d 1103, 1109 (5th Cir.1991). The harm is aggravated by differences in appearance and quality control (remember the defective Preston) that while not big enough to rebut an inference of copying could impair Ty's goodwill, if customers buy Preston thinking it is a Beanie Baby rather than a knockoff. This is a type of loss more commonly associated with trademark cases, but it is applicable to copyright as well, as illustrated by the award in *Harolds Stores, Inc. v. Dillard Department Stores, Inc.*, 82 F.3d 1533, 1547 (10th Cir.1996); see also *Data General Corp. v. Grumman Systems Support Corp.*, 36 F.3d 1147, 1173 (1st Cir. 1994) (dictum). Such an award draws additional sustenance from the doctrine of "moral right," the right of the creator of intellectual property to the preservation of the integrity of his work—a doctrine that is creeping into American copyright law. See *Seshadri v. Kasraian*, 130 F.3d 798, 803–04 (7th Cir. 1997), and cases cited there.

If GMA could show greater irreparable harm to itself from the grant of the injunction than irreparable harm to Ty from its denial, this would be another consideration to throw into the hopper in determining the appropriateness of the preliminary injunction. E.g., *American Hospital Supply Corp. v. Hospital Products Ltd., supra*, 780 F.2d at 593–94; *Hawksbill Sea Turtle v. Federal Emergency Management Agency, supra*, 126 F.3d at 478 n. 13. It has not attempted to show this.

We find no error of law, no clear error of fact, and no abuse of discretion in the grant of the preliminary injunction to Ty. The judgment of the district court is therefore

AFFIRMED.

APPENDIX

Pig Floppy Friend
CAP 139

End of ear is folded over + sewn to cheek.

Knotted corkscrew tail

Pink Satin bow

8" around

(Black thread on hands + feet

Black thread for nostrils

Eyes = Black

* Fill with beans

8"

Color:
Body = white
hands + feet = pale pink
nose = pale pink
Inside ears = pale pink
Outside ears = white
tail = white

# Pig Floppy Friend CAP139

Bow ties under face

Bottom View

Ty's "Daisy the Cow"

GMA's "Louie the Cow"

