**DUNKIN' DONUTS INCORPORATED,**
Plaintiff,

v.

**KASHI ENTERPRISES,
INC., Defendant.**

No. Civ.A. 1:00–CV–929CAP.

United States District Court,
N.D. Georgia,
Atlanta Division.

June 8, 2000.

Kelly Jean Beard, Meadows Ichter & Trigg, Atlanta, GA, Robert L. Zisk, pro hac vice, Steven A. Browne, pro hac vice, Schmeltzer Aptaker & Shepard, Washington, DC, for plaintiff.

### *ORDER AND PRELIMINARY INJUNCTION*

PANNELL, District Judge.

The plaintiff filed the instant action, seeking injunctive relief from the defendant's alleged trademark infringement and violation of the plaintiff's franchise standards, pursuant to the Lanham Trade-Mark Act, 15 U.S.C. § 1114(1)(a) (the "Lanham Act"). The matter is currently before the court on the plaintiff's motion for a preliminary injunction.

### I. *BACKGROUND FACTS*

The plaintiff is engaged in the business of franchising independent business persons to operate its donut shops throughout the United States. The plaintiff's franchisees are licensed to use the trade names, service marks, and trademarks of Dunkin'

Donuts® and to operate under the Dunkin' Donuts® system, which involves the production, merchandising, and sale of doughnuts and related products. The plaintiff has the exclusive license to use and license others to use the Dunkin' Donuts® marks and trade names and has used them continuously since 1960.

In 1999, the plaintiff expended seventy-five million dollars ($75,000,000) on advertising to promote Dunkin' Donuts® products. The plaintiff operates approximately 3,700 domestic and 1,400 foreign shops and franchises. The Dunkin' Donuts® mark features a distinctive trade dress, including the pink and orange color scheme, and the frankfurter lettering style. The plaintiff, through its shops and franchises, has serviced millions of consumers, who have come to know and recognize the Dunkin' Donuts® marks, and to associate them exclusively with products and services offered by the plaintiff and its franchises. The marks are among the best and most widely known trademarks in the United States and represent significant assets to the plaintiff in the form of goodwill and favorable reputation.

The plaintiff's goodwill and favorable reputation has been harmed in recent years by national television exposes, showing some of its franchisees' employees using improper hygiene and food preparation techniques. These types of negative publicity have also appeared in the news and print media. In their motion for a preliminary injunction, the plaintiff contends that all of this negative publicity can endanger its goodwill and reputation.

The parties entered a franchise agreement (the "Franchise Agreement"), under which the defendant received a license to use the Dunkin' Donuts® trademarks, trade name and trade dress. The plaintiff provided the defendant with a set of manuals and guidelines (collectively the "Manuals"), which set forth in detail the procedures, methodology and standards applicable to the operation of the franchise. The Manuals specify the standards for health, sanitation and safety for the franchise's operation. The Franchise Agreement acknowledges the importance of maintaining work conditions commensurate with the Manuals. On March 10, 2000, the defendant's franchise was inspected by the plaintiff's representative, who identified numerous health, sanitation and safety violations. The same day, the plaintiff issued the defendant a Notice of Default and Notice to Cure, which detailed and requested the curing of the standards violated. According to the plaintiff, the defendant continues to violate the standards.

## II. *LEGAL DISCUSSION*

■ Initially, the court notes that where material facts are not in dispute, or where facts in dispute are not material to the preliminary injunction sought, the court need not hold an evidentiary hearing. *See McDonald's Corp. v. Robertson,* 147 F.3d 1301, 1313 (11th Cir.1998) (citing *Maryland Casualty Co. v. Realty Advisory Board on Labor Relations,* 107 F.3d 979, 984 (2d Cir.1997)). The court may enter an order based upon " 'affidavits and other documentary evidence if the facts are undisputed.' " *McDonald's Corp.,* 147 F.3d. at 1313 (quoting *Ty, Inc. v. GMA Accessories, Inc.,* 132 F.3d 1167, 1171 (7th Cir. 1997)). The court notes that the plaintiff's motion is unopposed.

■ The court may grant injunctive relief if the movant shows the following: (1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *See All Care Nursing Service, Inc. v. Bethesda Memorial Hospital, Inc.,* 887 F.2d 1535, 1537 (11th Cir.1989) (citing *Baker v. Buckeye Cellulose Corp.,* 856 F.2d 167, 169 (11th Cir. 1988)). It is well-established in the Eleventh Circuit that "[a] preliminary injunction is an extraordinary and drastic reme-

dy not to be granted unless the movant clearly established the 'burden of persuasion' " as to the four requirements. *See McDonald's Corp.*, 147 F.3d at 1301.

██ The plaintiff requests that the court preliminarily enjoin the defendant from violating the plaintiff's a standards for health, sanitation, and safety as identified in the Critical Food Safety and Sanitation Inspection form. As to the first requirement of substantial likelihood of success on the merits, the court finds that the record demonstrates that the defendant has breached the Franchise Agreement, which in plain terms obligates the defendant to operate a clean and safe franchise. Further, the record includes numerous documents, affidavits, and photographs, which demonstrate that the defendant has failed to cure the alleged violations. Accordingly, the court finds that the plaintiff is likely to succeed in its action to enjoin the defendant from violating the Franchise Agreement standards and the Lanham Act.

With respect to the second requirement, the record evidence demonstrates that there is a threat of irreparable injury to the plaintiff if the injunction is not granted. The possibility of irreparable injury arises because the record evidence indicates that the unsanitary conditions at the defendant's store may result in illness to the plaintiff's customers. To this end, the court notes that the plaintiff has an important interest in the uniformity of food specifications, preparation methods, quality and appearance, facilities and service of its franchisees. *See McDonald's Corp.*, 147 F.3d at 1309. No only does the defendant's conduct place the plaintiff's trademarks and trade name at risk, but more importantly, it puts the public in danger of food contamination. Further, the plaintiff has a strong legal interest in avoiding disputes stemming from the cleanliness and safety of its products. *See id.* Accordingly, if customers become ill due to the defendant's franchises' unsanitary conditions, the plaintiff's national reputation, goodwill, and business will be harmed. Thus, the court holds that this harm constitutes an irreparable injury.

The third requirement necessitates the court's finding that the threatened injury to the plaintiff outweighs whatever damage the proposed injunction may cause the defendant. The instant injunction would only require that the defendant comply with the Franchise Agreement, which it freely entered. While no harm would befall the defendant by its compliance with the sanitation standards, the court notes that its business and public safety would at worst improve. Accordingly, the court finds that threatened injury to the plaintiff outweighs any conceivable injury to the defendant.

Finally, as to the fourth requirement of not being adverse to the public interest, the court recognizes that it is self-evident that a cleaner and safer food preparation environment serves the public interest. Accordingly, the court finds that the injunction would not be adverse to the public interest.

## III. *CONCLUSION*

For the foregoing reasons, the court hereby GRANTS the plaintiff's motion for preliminary injunction [Doc. No. 3–1].

Specifically, the defendant is preliminarily enjoined, until December 31, 2000, from violating the plaintiff's standards for health, sanitation, and safety as identified on the Critical Food Safety and Sanitation Inspection form attached to and made a part of this order. The defendant has fifteen (15) days from the docketing of this order to comply with the court's order.