# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 05-1188

JASON GOODMAN, D.C.,

*Plaintiff-Appellant,*

*v.*

ILLINOIS DEPARTMENT OF FINANCIAL AND
PROFESSIONAL REGULATION, DAVID E. BLUTHARDT,
in his official capacity as the Acting Director of the
Department's Division of Professional Regulation,
AND ALLAN G. BENNETT, M.D., TARIQ H. BUTT, M.D.,
GEORGIA D. LUBBEN, M.D., SANDRA F. OLSON, M.D.,
EDWARD P. ROSE, M.D., DOUGLAS P. WEBSTER, D.O.,
AND LINDA L. ZANGE, D.C., in their official
capacity as the duly appointed members of the
Medical Disciplinary Board of the Division of
Professional Regulation,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 04 C 3232—**Jeanne E. Scott**, *Judge.*

ARGUED OCTOBER 26, 2005—DECIDED NOVEMBER 29, 2005

Before FLAUM, *Chief Judge,* and EVANS, and WILLIAMS, *Circuit Judges.*

FLAUM, *Chief Judge.* Jason Goodman is a chiropractor who currently practices in St. Louis, Missouri. He is

licensed in Illinois, and states that he plans to open a clinic in Springfield. He wishes to telemarket his services to people in the Springfield area who have recently been in car accidents, but is prevented from doing so by the Illinois Medical Practice Act ("the Act"). The Act prohibits medical professionals from soliciting professional patronage under penalty of professional discipline. Goodman has filed a First Amendment challenge to the law and has requested a preliminary injunction against the Illinois Department of Financial and Professional Regulation ("the Department") that would prohibit any professional discipline against him for telemarketing.

The district court held an evidentiary hearing on the preliminary injunction issue. At that hearing, the court ruled that affidavits from another chiropractor and four of Goodman's patients in Missouri should be excluded as hearsay. Although the Department presented no evidence at the hearing, it argued that Goodman was unlikely to prevail on the merits because, among other reasons, the statute had already survived a constitutional challenge in the Illinois Supreme Court. At the close of evidence, the district court denied the injunction request, ruling that Goodman did not meet his burden of showing that he was likely to prevail on the merits of his constitutional claim. Goodman has filed an interlocutory appeal, claiming that the district court erred by not granting the injunction and by excluding the affidavits from the evidentiary hearing. For the following reasons, we affirm the district court's denial of the preliminary injunction.

## I.  Background

Dr. Goodman is a chiropractor who is licensed in Illinois and currently practices in St. Louis, Missouri. He wishes to open an office in Springfield, Illinois. As a method of building his practice, he would like to hire telemarketers

to call recent car accident victims and offer free consultations at his clinic. He intends to focus his calls on those personal injury patients who have suffered minor injuries or have sustained soft tissue injuries in a low-impact rear-end collision. The telemarketers would find potential customers' names from public, legal sources, such as newspapers and court records. Goodman contends that he would not call any phone number that is listed on the National Do Not Call Registry. Goodman has been telemarketing sixty to seventy prospective patients per week for approximately one year in St. Louis.

Under Illinois law, Goodman could be professionally disciplined if he makes such telephone solicitations to prospective patients in Springfield. Under the Act, the Department could "revoke, suspend, place on probationary status, or take any other disciplinary action as the Department may deem proper" against any professional who solicits patronage through any agent. 225 ILL. COMP. STAT. §§ 60/26, 60/22(a)(24). Goodman claims that this regulation violates his First Amendment rights by wrongfully suppressing protected commercial speech.

Goodman filed a complaint in district court, seeking declaratory and injunctive relief. He also filed a motion for preliminary injunction, requesting that the Department be enjoined from enforcing the Act pending resolution of his suit.

In support of his preliminary injunction, Goodman testified to explain his proposed telemarketing plan. He testified that he intended to hire salaried employees to call individuals who were involved in car accidents. The telemarketers would identify who they were and why they were calling. They would offer the potential customer a free screening with Dr. Goodman. Goodman acknowledged that the telemarketers' goal would be to schedule the appointment, but insisted that the telemarketers would

follow a script which is truthful, non-deceptive, and conforms to Federal Trade Commission requirements. He further claimed that all customers would be told that there was no obligation to schedule an appointment. If a customer was not interested in an appointment, the telemarketers would be instructed to immediately end the call and not to call that number again. If a customer agreed to an appointment, Dr. Goodman would make a follow-up call within an hour of the appointment being set. He claimed that if the potential customer seemed to be confused or as if "their head [was] not right," he would cancel the appointment. If, after his initial consultation, he believed the patient could benefit from chiropractic treatment, he would arrange for another appointment with the patient. The next appointment would require payment.

Goodman claimed that he would take special care to ensure that his telemarketers did not deviate from their prepared script and did not impart false or misleading information. He would personally train and monitor employees and would have the telemarketers tape their calls. Goodman also claimed that he would establish strict rules, such as requiring telemarketers to identify themselves and the clinic within the first minute of the call. Telemarketers would also be instructed not to discuss specific health problems with potential patients, except to suggest an appointment.

Goodman further testified that patients can benefit from immediate treatment of accident injuries. Immediate treatment, he claimed, can reduce "over-healing" and can release endorphins, which act as natural painkillers and alleviate suffering. Further, tissue that is not treated immediately can repair improperly with less motion and strength, which will lead over time to degeneration of joints and discs. Prompt treatment prevents such consequences.

Goodman also offered his own affidavit, a written statement by another chiropractor, and four identical written

statements from satisfied customers in Missouri. Goodman did not offer any proposed scripts for his telemarketers, nor tapes of sample calls from Missouri.

The Department objected to the affidavits from the patients and the other chiropractor, claiming that they were hearsay. The Department also claimed that the patient statements were cumulative of Goodman's testimony that he received no complaints about his calls in Missouri. The trial court agreed that the affidavits were hearsay, and excluded them.

The Department presented no evidence of its own, but argued in closing that Illinois's ban on professional solicitation materially and directly furthered significant government interests in protecting the public against overreaching and protecting the medical profession's integrity and professionalism. The Department also drew the court's attention to *Desnick v. Dep't of Prof'l Reg.*, 665 N.E.2d 1346 (Ill. 1996). In that case, the Illinois Supreme Court upheld the Act's telephone solicitation ban against a First Amendment attack. The Department also argued that the statute was not a complete restriction on the relevant speech, because direct mailings, television, and newspaper advertising were allowed. Finally, the Department argued that policing chiropractor telemarketing throughout the state of Illinois would be impractical, as there are over fifty chiropractors in Springfield alone, and many telemarketers make over twenty calls per day.

The district court denied Goodman's motion for preliminary injunction. Although the court ruled that he had standing to pursue the lawsuit because of his planned office in Springfield, the court did not believe that Goodman had carried his burden of establishing that his proposed speech was protected. Moreover, the judge was not convinced that susceptible individuals would not be harmed by the calls. The court noted that it did not have the script that Good-

man wished to use, nor details of the "training" that the telemarketers would receive. The court was also concerned that Goodman had presented no evidence regarding how he planned to determine which accident victims should not be called because they were particularly vulnerable, such as those who were on medication. Given that Goodman had not shown that his proposed speech was not misleading or unlawful, the court ruled that he had not shown a likelihood of success on the merits. The court added that although the preliminary injunction was not being granted, discovery would proceed and that Goodman still could eventually win injunctive relief.

Goodman now appeals both the denial of preliminary injunction and the exclusion of the affidavits from the evidentiary hearing.

## II. Discussion

As the Supreme Court has observed, "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2948, pp. 129-30 (2d ed. 1995)). To justify this relief, movants must show that (1) they have a reasonable likelihood of success on the merits; (2) no adequate remedy at law exists; (3) they will suffer irreparable harm which, absent injunctive relief, outweighs the irreparable harm the respondent will suffer if the injunction is granted; and (4) the injunction will not harm the public interest. *Joelner v. Vill. of Washington Park*, 378 F.3d 613, 620 (7th Cir. 2004) (citing *Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1601, 1607 (7th Cir. 1994)). A district court's denial of a preliminary injunction is reviewed for abuse of discretion. *Ashcroft v. Am. Civil Liberties Union*,

542 U.S. 656, 664 (2004) (citing *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 336 (1985) (O'Connor, J., concurring)); *Re/Max N. Cent., Inc. v. Cook*, 272 F.3d 424, 429 (7th Cir. 2001).

As a preliminary matter, Goodman claims that the district court improperly placed the burden on him to prove that his speech was protected. Instead, he argues that the Department bears the burden of proving that its regulation is justified, i.e., that it effectively prevents real harm. He cites three cases in support of this proposition, *Edenfield v. Fane*, 507 U.S. 761, 770 (1993); *Bailey v. Morales*, 190 F.3d 320, 323 (5th Cir. 1999); and *Pellegrino v. Satz*, No. 98-7356-CIV-FERGUSON, 1998 WL 1668786 (S.D. Fla. Dec. 22, 1998). The first two, *Edenfield* and *Bailey*, did not concern a preliminary injunction, but instead were substantive rulings on First Amendment claims. *Pellegrino,* though addressing preliminary injunctions, is an unpublished opinion. Moreover, its logic conflicts with Supreme Court case law addressing the standard for granting preliminary injunctions in First Amendment cases. *Ashcroft v. American Civil Liberties Union* stated that plaintiffs must demonstrate that they are likely to prevail on the merits if they are to receive a preliminary injunction. 542 U.S. at 666 (citing *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975)); *see also Mazurek*, 520 U.S. at 973.

This court has also followed this standard. *See, e.g.*, *Curtis v. Thompson*, 840 F.2d 1291 (7th Cir. 1988) (affirming denial of preliminary injunction against enforcement of ban on real estate sales solicitation because plaintiff demonstrated no chance of success on the merits of his First Amendment challenge); *Re/Max,* 272 F.3d at 429; *Chi. Dist. Council of Carpenters Pension Fund v. K & I Const., Inc.*, 270 F.3d 1060, 1064 (7th Cir. 2001); *Boucher v. Sch. Bd. of Sch. Dist. of Greenfield*, 134 F.3d 821, 823-24 (7th Cir. 1998). Therefore, for the purposes of a preliminary injunc-

tion, Goodman has the burden of showing that he is likely to succeed on his First Amendment claim.

Goodman has not met that burden in this case. In order to prevail in a First Amendment case, the plaintiff must first show that protected speech is being restricted. The district court found that Goodman had not shown that his speech was protected commercial speech because he had not submitted a copy of the script to the court, nor revealed any of the substance of the telemarketers' anticipated comments to potential customers. He did not provide any evidence regarding how he intended to ensure that particularly vulnerable individuals would not receive calls. The only evidence he offered to prove that the telemarketer calls would not be misleading was his own testimony promising that they would be truthful and non-coercive.

Goodman has argued that First Amendment plaintiffs should not be required to provide an exact script of their proposed speech in order to obtain a preliminary injunction. While it may be true that a script is not necessary in each instance, Goodman has failed to show why, in this instance, rejecting the limited evidence he offered was an abuse of discretion by the trial court.

The Supreme Court has recognized the danger of misleading statements when telemarketing professional services, noting that because professionals render services rather than sell standardized products, there is a "consequent enhanced possibility for confusion and deception if they were to undertake certain kinds of advertising." *Va. Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 773 n.25 (1976); *see also Shapero v. Ky. Bar Ass'n*, 486 U.S. 466, 475-76 (1988) (distinguishing direct mail from personal solicitation, stating that the latter was "rife with possibilities of overreaching, invasion of privacy, the exercise of undue influence, and outright fraud" and presented "unique difficulties" for regulation because it was

not open to public scrutiny (internal citations and quotation marks omitted)). It was not an abuse of discretion for the district court to discount Goodman's self-serving statement on such an important issue; courts need not assume that all such speech is harmless.

Following the Supreme Court's opinion in *Central Hudson*, the First Amendment analysis ends here, for commercial speech is not automatically protected speech. "[T]here can be no constitutional objection to the suppression of commercial messages that do not accurately inform the public about lawful activity." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York,* 447 U.S. 557, 563 (1980). Therefore, analysis of a commercial speech claim ends once it is determined that the speech is not protected. *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 367 (2002) ("Under [the *Central Hudson*] test, we ask as a threshold matter whether the commercial speech concerns unlawful activity or is misleading. If so, then the speech is not protected by the First Amendment."). Since Goodman did not bear his burden of showing that his telemarketing speech was protected, the district court acted within its discretion when denying his motion for a preliminary injunction.

One issue remains unresolved: whether the district court abused its discretion by excluding several affidavits from the evidentiary hearing. The exclusion of evidence is reviewed for abuse of discretion. The district court's decision is to be overturned only if no reasonable person would agree with the trial court's ruling. *Snipes v. Ill. Dep't of Corr.*, 291 F.3d 460, 463 (7th Cir. 2002). This court has held, "[N]o error in either the admission or exclusion of evidence is ground for . . . vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice." *Speedy v. Rexnord Corp.*, 243 F.3d 397, 404 (7th Cir. 2001) (quotation marks omitted) (citing FED. R. CIV. P.

61; *Palmquist v. Selvik*, 111 F.3d 1332, 1339 (7th Cir. 1997)). Even an erroneous evidentiary ruling can be deemed harmless if the record indicates that the same judgment would have been rendered regardless of the error. *Id.*

Goodman claims that during the evidentiary hearing, the court erroneously excluded the affidavits of Dr. Richard Lee Christie, as well as the affidavits of four satisfied customers from his Missouri practice.

Dr. Christie's affidavit stated that: (1) patients have more control over telemarketing than direct mail or mass media advertising because they can simply hang up the phone if they are not interested; (2) the decreased cost of telemarketing can be passed on to consumers of chiropractic treatment, thus benefitting the public; and (3) tele-marketing does not present any serious threat of exposing a prospective patient to undue influence, because the patient can sign up for the Do Not Call Registry, hang up, not accept the appointment, or not attend the appointment after it's made.

The patients' affidavits, all identical, stated that: (1) they had been telephonically solicited to visit Dr. Goodman's practice in St. Louis; (2) during the telephone call, the person representing Dr. Goodman's clinic was very kind and put no pressure on them to visit the clinic; (3) they did not feel that they were under any pressure to accept the offer to visit the clinic; (4) they were grateful to receive the phone call and be given the opportunity to visit Goodman's clinic; and (5) the telephone call was beneficial to them because they got answers to questions about their condition that they could not have obtained elsewhere.

The district court excluded these affidavits as hearsay. Goodman argues that hearsay affidavits are fully admissi-ble at preliminary injunction hearings, citing *Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1171 (7th Cir. 1997). In that case, the court ruled that live testimony would have

been cumulative to an affidavit that was already in evidence, and therefore an evidentiary hearing was not necessary. However, the court did note, "Affidavits are ordinarily inadmissible at trials but they are fully admissible in summary proceedings, including preliminary-injunction proceedings." *Id.* at 1171. Later, the court engages in a hypothetical that involves a district court judge who "labor[s] under the misapprehension that affidavits are inadmissible in preliminary-injunction proceedings." *Id.* Therefore, although the case is not directly on-point, it does support Goodman's contention.

Even assuming that the evidence should have been admitted, however, we conclude that excluding it was harmless error. The district court based its ruling on its inability to review the proposed script and thus to know whether the speech was protected. Goodman had already testified that the script was not false or misleading, so the district court apparently wanted concrete information on the contents of the script. These affidavits would have done nothing to remedy the court's reluctance to issue a preliminary injunction based on the information before him. Accordingly, we need not reach the issue of whether the district court abused its discretion by not admitting the affidavits, because any error was harmless.

## III. Conclusion

For the foregoing reasons, we AFFIRM the district court's decision to deny the preliminary injunction.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*