In the
United States Court of Appeals
For the Seventh Circuit

Nos. 00-2811 & 00-3717

Susan Wakeen Doll Company, Inc.,

Plaintiff-Appellee,

v.

Ashton-Drake Galleries,

Defendant-Appellant.

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 C 6777--Elaine E. Bucklo, Judge.

Argued February 28, 2001--Decided November 14, 2001

  Before Harlington Wood, Jr., Kanne, and
Rovner, Circuit Judges.

  Kanne, Circuit Judge.  Plaintiff, Susan
Wakeen Doll Company ("Wakeen"), sculpts,
designs, and markets collectable dolls.
Wakeen sued Ashton-Drake Galleries ("Ash
ton") for copyright infringement under 17
U.S.C. sec. 501 for allegedly copying the
head design used in one of Wakeen's most
popular dolls, the "Love Me Tender."
After a jury trial, the court entered
judgment for Wakeen in the stipulated
amount of $2.1 million and awarded Wakeen
$203,181.92 in attorney's fees. Ashton
appeals, alleging that 1) the district
court erred in denying its motion for
judgment as a matter of law or, in the
alternative, for a new trial, 2) the
district court submitted erroneous jury
instructions to the jury, 3) the district
court erred in denying its motion for a
mistrial, and 4) the district court erred
in awarding attorney's fees. We affirm
the district court's denial of Ashton's
motion for judgment as a matter of law or
a new trial and find that the allegedly
erroneous jury instructions did not
prejudice Ashton. We also affirm the
district court's denial of Ashton's
mistrial motion. However, we vacate and
remand the district court's award of
attorney's fees.

I.  History

A.  The Dolls

A baby head doll sculptor sculpts in a pliable clay called plasticine. After sculpting the clay, the artist puts the clay into a plaster mold. The artist then makes a porcelain model of the baby head by pouring liquid porcelain into the plaster mold and firing the head in a kiln. The artist paints the hardened porcelain head and adds hair and a body. Next, the artist does a wax casting of the plaster mold and sends it to a mold maker, who submerges it into a liquid of copper and nickel in order to create a metal mold. This metal mold is used to make a "master skin," or vinyl head. The best master skins become the actual production heads that become the dolls.

Susan Wakeen, a reputed sculptor and designer of baby dolls, started the Susan Wakeen Doll Company in 1989. That same year, she sculpted the original "Love Me Tender" ("LMT") doll head design and registered its copyright in 1991. The design received a national award of excellence and was a commercial success. As a result, it has been used in approximately forty different dolls marketed by Wakeen.

In 1990, Wakeen hired Marlene Sirko ("Sirko") to design a head for a "relative" of LMT--a baby doll head that looked like it was in the same family as LMT. Susan Wakeen told Sirko that she would supply her with a master skin of LMT to use as a reference. Susan Wakeen claimed that she sent Sirko the LMT master skin via UPS, though Sirko denied that she ever received it. Susan Wakeen was not pleased with the sculpt that Sirko produced, calling it "cartoonish" and "oversized." In the fall of 1990, Wakeen and Sirko's relationship ended.

Ashton also markets collectable dolls, though its dolls are created by independent artists. In 1993, Sirko supplied Ashton with a clay sculpt that Ashton later marketed as a doll entitled "The Little Drummer Boy" ("Drummer"). Sirko was unable to produce any other marketable sculpts for Ashton, and, therefore, Ashton terminated its relationship with Sirko on October 21, 1993. Despite this, Ashton began marketing and selling Drummer at the end

of 1994.

The similarities between Drummer and LMT were brought to Susan Wakeen's attention by several Wakeen employees who had seen advertisements for Drummer and by a professional doll buyer who stated that she had seen Drummer and thought that it looked like LMT. As a result, Susan Wakeen attempted to create the Drummer head using the LMT master skin. She made a mold from the master skin, poured porcelain into the mold, and shrank it two generations to match the size of the Drummer head. She then modified the head by shaving off a small amount of porcelain in a few places. When she finished, she concluded that the shrunken and modified head was identical to the Drummer head.

Consequently, Wakeen wrote to Ashton on July 19, 1995 and informed it of the alleged copyright infringement. Ashton wrote to Sirko, asking her to explain the "extreme similarities between the two sculpts." Sirko responded that she had created the head that became Drummer independently, using a photo that she had taken at her son's nursery school as her reference. Ashton then wrote to Wakeen, assuring them that "the trail of development of the Little Drummer Boy is complete, from dated photo references of the child who was used as a model for the doll to pictures of the work in progress." Ashton also informed Wakeen that Kathy Schultz, the Program Manager in charge of Drummer, "worked with [Sirko] in the development of the sculpt."

During the following two years, Wakeen repeatedly asked Ashton to send it the work-in-progress photos and the original clay that Sirko submitted to Ashton. In response, Ashton told Wakeen that it had concluded that the original sculpt of Drummer and the final version of LMT were very different, and that the two works only appeared similar after the reduced LMT head had been modified. Ashton did not make the original clay sculpt available to Wakeen or produce any photographs of the work-in-progress until court proceedings commenced. Throughout its dispute with Wakeen, Ashton continued to sell and profit from dolls using the Drummer head.

B.  The Trial

   In October, 1998, Wakeen filed suit under 17 U.S.C. sec. 501, claiming that Ashton infringed its copyright by producing and marketing Drummer. Susan Wakeen asserted that she had sent Sirko an LMT master skin, thus giving Sirko an opportunity to copy the doll head. Susan Wakeen produced a UPS receipt that indicated that she had sent a package to Sirko on the day that she claimed to have sent the master skin to Sirko. Wakeen also presented evidence that LMT and Drummer were substantially similar. Wakeen's witness, doll-expert Jeanne Singer, opined that the external structures of the doll heads were identical. Susan Wakeen and Singer both testified that they had compared the Sirko head to a plaster-filled master skin of LMT and concluded that the dimensions and placement of the dolls' facial features were virtually identical. Singer also testified that although some of the features were different between the two dolls, Sirko had most likely made minor modifications to the LMT master skin in order to disguise her copying. Susan Wakeen demonstrated to the jury how quickly Drummer could be created from a reduced LMT head. Finally, Wakeen claimed that Sirko did not have the skill to independently create a doll head like Drummer's.

   Ashton challenged each aspect of Wakeen's case. Initially, Ashton attempted to show that Sirko could not have copied LMT. Sirko denied receiving a master skin from Wakeen, and Ashton argued that the evidence was insufficient to prove that Wakeen had sent Sirko the LMT master skin, or that Sirko had received it. Ashton highlighted that Wakeen could not produce any records from its shipping department or a transmittal letter to support its claim that it sent the master skin to Sirko. Ashton also claimed that the UPS receipt from the package that Wakeen sent to Sirko did not describe the package's contents.

   Ashton next attempted to rebut Wakeen's contention that the dolls were substantially similar by calling a doll-expert, Erik Blome, who claimed that there were overwhelming dissimilarities between the two dolls. Blome testified that Drummers' features--specifically,

its nose, cheeks, and lips--were different than LMT's. Blome testified that he measured the distances between facial features on the LMT plaster-filled skin and on the Drummer plaster, and that the distances were "extremely different" between the two. Ashton also argued that Susan Wakeen's modification demonstration was misleading because she was using a head made from porcelain, while Sirko would have had to have modified an LMT head made out of vinyl.

Finally, Ashton claimed that Drummer's head was the independent creation of Sirko. Sirko explained, via deposition, that she began sculpting her doll head in early 1993. She said that she sculpted freehand from a block of plasticine clay, using photographs of a toddler boy taken at her son's nursery school in 1990 as her model. Sirko testified that others witnessed her work-in-progress, although Ashton was unable to produce any photographs of Sirko's work-in-progress.

Ashton called several witnesses to support Sirko's assertions. Tania Honeck, who lived with Sirko for several months, testified that she watched Sirko create the Drummer head. Honeck saw Sirko warm the clay and mount it to a sculpting pole. Honeck also helped select reference photographs of the toddler claimed to have been the model for Sirko's head and said that the photos were constantly present in Sirko's studio during the sculpting process. Further, she never saw an LMT master skin in Sirko's home or studio. Ashton then called Sandra Gianini, an artist friend of Sirko's. Gianini testified that she visited Sirko's studio in 1993 and that she helped paint eyes on and add hair to the Drummer head. Gianini stated that she was not present when Sirko sculpted the Drummer head, though she also said that if she saw the head prior to its completion, she probably would not have remembered it because of its unfinished state. She also testified that she did not see an LMT master skin in Sirko's studio. Honeck and Gianini both testified that Sirko sculpted Drummer in late 1992 or early 1993, right after Christmas.

Sirko's husband Yuri testified via deposition. Yuri stated that Sirko started Drummer's head from a block of clay and that he saw Sirko using the

reference photographs of the toddler boy while she was sculpting. He also stated that he never saw an LMT doll, master skin, or photograph in Sirko's studio. Both Yuri and Marlene Sirko testified that Sirko sculpted Drummer's head before she had any contact with Ashton. They claimed that after completing Drummer's head in March, 1993, Sirko sent Ashton photographs of the finished sculpt, and that Ashton suggested a few minor changes, such as making the mouth more pouty. They also claimed that after Ashton approved Sirko's work, it made the plaster molds used in the production process. Finally, Ashton presented evidence showing that Sirko had the talent and experience necessary to create Drummer's head.

C.  The Instruction Conference

Both parties met with the district court judge before closing arguments in order to discuss the jury instructions each party had previously submitted to the court. Rather than using the parties' proposed instructions, the court tendered a two-page instruction on copyright law at the start of the instruction conference and gave the parties a fewminutes to look it over. The instruction informed the jury that Wakeen should prevail if it proved that Sirko had access to LMT and that Drummer and LMT were substantially similar. Ashton objected to this instruction because it did not address independent creation, which would rebut Wakeen's copyright infringement claim. Ashton argued that even if Wakeen proved access and substantial similarity, Ashton should prevail if Sirko independently created her work. Ashton requested that another line be added to the jury instructions addressing independent creation. The district court judge did not consider such an instruction necessary and stated that once Wakeen proved access and substantial similarity, then there could be no independent creation. The district court judge and Ashton debated this area of copyright law for a few hours, but Ashton failed to convince the judge that its position was correct. The district court judge submitted the original jury instructions to the jury, adding one line that stated that Ashton claimed that Sirko independently created her work.

At this conference, both parties also tendered interrogatories covering access, substantial similarity, and independent creation that they proposed should be used if the court chose to submit a special verdict form to the jury. Wakeen also submitted a proposed general verdict form. The court opted for a special verdict, but prepared its own form that did not utilize the parties' proposed questions. The court's special verdict form asked the jury to answer two questions--one dealing with access and one dealing with substantial similarity. Because the court's verdict form did not include Ashton's proposed question dealing with independent creation, Ashton asked for a general verdict form. When the court refused, Ashton proffered a second question dealing with independent creation and suggested that the court include it on its special verdict form. The court refused this suggestion, and the conference ended.

D.   Closing Arguments

During closing arguments, Ashton repeatedly told the jury that it should find that Ashton did not infringe Wakeen's copyright because Sirko had independently created her work. Ashton explained to the jury that if Sirko independently created her work, then that meant that she did not copy LMT and that there was no infringement. Ashton also told the jury that if it found that Sirko independently created her work, then it should mark "no" on the special verdict form asking whether the two heads were substantially similar. Although Wakeen did not object to this comment, the district court judge reprimanded Ashton in front of the jury indicating that this comment improperly stated the law.

E.   Jury Deliberations

The original jury verdict form posed two questions to the jury: "1) Do you find that Marlene Sirko had access to plaintiff's copyrighted sculpture?" and "2) Do you find that there exists a substantial similarity between the sculpture that became Ashton Drake Galleries' 'Little Drummer Boy' and plaintiff Susan Wakeen Doll Company's copyrighted sculpture?" The morning after the jurors began deliberating, the district court decided that it needed to

ask a separate question dealing with independent creation. Wakeen opposed submitting the supplemental verdict form without also submitting clarifying instructions to the jury. Ashton agreed that the court needed to submit the supplemental verdict form, but argued against submitting clarifying instructions. Neither party objected to the court's decision to submit the supplemental verdict form after the jury returned its verdict with respect to the original two questions. Therefore, after the jury answered "yes" to both of these questions, the district court judge gave the jury a supplemental verdict form containing the following question: "Do you find that Marlene Sirko copied plaintiff's copyrighted sculpture to create the sculpture that became defendant Ashton-Drake Galleries' 'Little Drummer Boy?'" Ashton moved for a mistrial after the supplemental verdict form was submitted to the jury on the grounds that the deliberative process had been impaired. The court denied Ashton's mistrial motion.

The jurors answered "yes" to this third question, and the court entered a verdict for Wakeen. The court awarded Wakeen $2.1 million in damages, an amount to which both parties had stipulated before trial. Ashton moved for judgment as a matter of law ("JMOL") or, alternatively, for a new trial under Federal Rules of Civil Procedure 50(b) and 59(a). The district court denied Ashton's motion. The district court then awarded Wakeen attorney's fees in the amount of $203,181.92.

II. Analysis

A. Standard of Review

We review a district court's denial of a motion for JMOL de novo. See Palmquist v. Selvik, 111 F.3d 1332, 1343 (7th Cir. 1997). Our inquiry, however, is limited to "whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in the light most favorable to the party against whom the motion is directed." Goodwin v. MTD Prods., Inc., 232 F.3d 600, 606 (7th Cir. 2000). In other words, we reverse only if we find that no rational juror could have found

for the prevailing party. See Emmel v. Coca-Cola Bottling Co. of Chicago, 95 F.3d 627, 629 (7th Cir. 1996). We review a district court's denial of a motion for a new trial to see whether the district court judge abused her discretion in ruling that the jury verdict was not against the clear weight of the evidence. See Robinson v. Burlington N. R.R., 131 F.3d 648, 656 (7th Cir. 1997). This means that we will not overturn a jury verdict if there is a reasonable basis in the record to support it. See id.

B.   Sufficiency of the Evidence

   Ashton's first argument is that the evidence at trial was insufficient for Wakeen to establish a claim of copyright infringement against it, and therefore, that the district court erred in not granting its motion for JMOL or a new trial. To establish copyright infringement, a plaintiff must prove two elements: "1) ownership of a valid copyright, and 2) copying of constituent elements of the work that are original." Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 361, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991). The parties do not dispute that Wakeen owns a valid copyright in LMT, but disagree about whether Sirko copied LMT to create the head that Ashton marketed as Drummer. Given that direct evidence of copying is normally unavailable, "copying may be inferred where the defendant had access to the copyrighted work and the accused work is substantially similar to the copyrighted work." Atari, Inc. v. N. Am. Phillips Consumer Elecs. Corp., 672 F.2d 607, 614 (7th Cir. 1982). Thus, Wakeen could establish a prima facie case of copyright infringement by showing that Ashton had access to its copyrighted LMT doll and that Drummer was substantially similar to LMT. See, e.g., Ty, Inc. v. GMA Accessories, Inc., 132 F.3d 1167, 1169-70 (7th Cir. 1997). However, the inference of copying that is drawn from proof of access and substantial similarity can be rebutted by the defendant's showing that it independently created the allegedly infringing work. See id. at 1171.

   As a practical matter, if "two works are so similar as to make it highly probable that the later one is a copy of the earlier one, the issue of access need not

be addressed separately, since if the later work was a copy its creator must have had access to the original." Id. at 1170. Thus, if the works resemble each other so closely as to make it highly unlikely that the challenged work was "an accident of independent creation," then the similarity "is evidence of access." Id. "The more a work is both like an already copyrighted work and--for this is equally important--unlike anything that is in the public domain, the less likely it is to be an independent creation." Id. at 1169. Thus, a strong showing of substantial similarity can operate to infer that the defendant had access to the plaintiff's work and that the defendant copied the plaintiff's work rather than independently created its own work. However, the presumption of copying that arises from a showing of substantial similarity can be rebutted by proof of independent creation. Id. ("[I]f independent creation results in an identical work, the creator of that work is free to sell it."). A defendant independently created a work if it created its own work without copying anything or if it copied something other than the plaintiff's copyrighted work. See 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright sec. 12.11[D], at 12-175 (2001).

We now turn to the evidence in this case to determine if it was sufficient to support the jury's findings that: 1) Ashton had access to LMT, 2) there were substantial similarities between LMT and Drummer, and 3) Ashton did not independently create Drummer. Viewing the facts in the light most favorable to Wakeen, as we must, we find that there was sufficient evidence to support the jury's findings.

Wakeen could prove access by showing that "the defendant had an opportunity to view the protected item." Wildlife Express Corp. v. Carol Wright Sales, Inc., 18 F.3d 502, 508 n.5 (7th Cir. 1994). Susan Wakeen testified that based on a previous working relationship, she sent a master skin of the LMT head to Sirko via UPS on July 16, 1990. Wakeen also introduced a UPS receipt into evidence to corroborate this testimony, which showed that UPS picked up a package addressed to Sirko from Wakeen on that day. While Sirko claimed that she never

received the UPS package, the jury rejected this testimony and determined that she did receive it--thereby inferring that she saw the master skin. The jury was presented with conflicting stories--that Sirko received the package containing the master skin or that she did not receive the package. Because arational juror could have believed Susan Wakeen's testimony that she sent the LMT master skin to Sirko via UPS, as reflected by the UPS receipt, the jury's finding that Sirko had access to LMT was not clearly erroneous. See Coca-Cola Bottling, 95 F.3d at 629; cf. Anderson v. City of Bessemer City, 470 U.S. 564, 574, 105 S. Ct. 1504, 84 L. Ed. 2d 518 (1985) ("[W]here there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous.").

The jury's access finding is further supported by the striking similarity between the LMT head and Sirko's doll head that provided the basis for Drummer. See Ty, 132 F.3d at 1170. This court applies the "ordinary observer" test to determine whether a substantial similarity existed between the two dolls' heads. Wildlife Express, 18 F.3d at 508-09. The inquiry under this test is "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectible expression by taking material of substance and value." Id. at 509 (quoting Atari, 672 F.2d at 614). Because the works at issue deal with the reproduction of a lifelike object--a toddler--Wakeen must prove that Drummer is substantially similar "to those few aspects of the work that are expression not required by the idea." Wildlife Express, 18 F.3d at 508.

The "idea" in this case was a depiction of a toddler's face. The artistic "expression" of LMT according to Wakeen was an idealized child's face that reflected the essence of a baby's beauty and innocence. Wakeen presented demonstrative exhibits and expert testimony at trial that supported the jury's factual determination that LMT and Drummer were substantially similar. The jury compared the two heads themselves, saw photographs of the two heads, examined porcelains of the heads, and

looked at an LMT head with Drummer hair in order to assess the similarities between the two works. In addition, the jury heard testimony from Singer, Wakeen's expert, saying that the two heads' facial features were virtually identical. For example, both heads portrayed a toddler with pouty lips that were lower on the right side of the mouth.

On appeal, Ashton argues that to the extent there is a resemblance between LMT and Drummer, this similarity is unavoidable. Ashton argues that babies' faces all have similar features such as large eyes, puffy cheeks, and doubled chins. Ashton also claims that there are, in fact, marked differences between the two dolls. For example, it notes the small differences in size between the features of the two heads. Even if we would have weighed the evidence differently than the jury, we cannot reverse unless we find that there was no rational basis for the jury's finding. See Goodwin, 232 F.3d at 606. Here, there was testimony showing the similarities between the two heads, and these similarities related to features that were not necessary to capture the essence of a baby--such as a pouty expression rather than a smile and lips that were lower on the right side. Thus, there was a rational basis for the jury's conclusion that LMT and Drummer were substantially similar. See Coca-Cola Bottling, 95 F.3d at 629.

Having found that Wakeen successfully presented a prima facie case of copyright infringement, the jury next considered whether Sirko copied LMT in designing the head that became Ashton's Drummer, or whether Sirko independently created her work. In support of its claim that Sirko independently created Drummer, Ashton presented testimony from Sirko's friends. These friends claimed that they saw Sirko referring to the photograph of the toddler while working on Drummer. Further, none of these witnesses saw the LMT master skin in Sirko's studio. Wakeen countered that Sirko had seen the master skin of the LMT, that this skin could easily be modified to produce Drummer, and that Sirko lacked the skill to independently create a head like Drummer without copying. Further, Wakeen's expert, Singer, testified that Drummer's

features indicated that Sirko made slight modifications to the LMT master skin. On appeal, Wakeen also identifies inconsistencies in the testimony of Sirko's friends. The jury evaluated all of this evidence and found that Sirko copied LMT in producing the head that became Drummer. Because there were facts supporting the jury's conclusion, this finding is not clearly erroneous. See Wildlife Express, 18 F.3d at 506 n.1.

The record supports the jury's findings that Sirko had access to the LMT master skin, that LMT and Drummer were substantially similar, and that Sirko copied LMT in designing the head that became Drummer. Therefore, these findings were not clearly erroneous, and the district court did not abuse its discretion in denying Ashton's motion for JMOL or for a new trial.

C.  Jury Instructions

Ashton's next contention is that the district court's instructions to the jury were erroneous, and that these errors were prejudicial, requiring that Ashton be granted a new trial. To win a new trial based on an erroneous jury instruction, Ashton must show that: 1) the instructions did not adequately state Seventh Circuit law and 2) it was prejudiced by the error because the jury was likely confused or misled. See Gile v. United Airlines, Inc., 213 F.3d 365, 375 (7th Cir. 2000). An erroneous jury instruction could not prejudice Ashton unless considering the instructions as a whole, along with all of the evidence and arguments, the jury was misinformed about the applicable law. See EEOC v. AIC Sec. Investigations, Ltd., 55 F.3d 1276, 1283 (7th Cir. 1995). In other words, even if the jury instructions in this case were erroneous, if the applicable principles of law were communicated to the jury-- through the arguments or evidence, for example--then Ashton does not deserve a new trial. See id.

The jury instructions in this case did not accurately present the relationship between access, substantial similarity, and independent creation as explained by this court in Ty, 132 F.3d at 1171. Specifically, the jury instruction on proving copyright infringement failed to convey to the jury that Wakeen could not

prevail if Sirko independently created Drummer./1 In Ty, 132 F.3d at 1171 (emphasis added), we held that:

Access (and copying) may be inferred when two works are so similar to each other and not to anything in the public domain that it is likely that the creator of the second work copied the first, but the inference can be rebutted by disproving access or otherwise showing independent creation.

However, the jury instructions in this case omitted crucial information and stated: "Access (as well as copying) may be inferred when a defendant's sculpture is so similar to plaintiff's sculpture that it is likely that the creator of defendant's sculpture copied plaintiff's sculpture." At oral argument, Ashton conceded that it did not object to this clause during the instruction conference. Therefore, Ashton has waived any argument with respect to this clause. See Deppe v. Tripp, 863 F.2d 1356, 1361 (7th Cir. 1988) (holding that Federal Rule of Civil Procedure 51 means "that in civil cases a plain error doctrine is not available to protect parties from erroneous jury instructions to which no objection was made at trial.").

   Further, the district court instructed the jury that: "If you conclude that Ms. Sirko had access to plaintiff's copyrighted sculpture you should find in favor of plaintiff Susan Wakeen Doll Company if you find that defendant's sculpture is substantially similar to plaintiff's copyright." The problem with this jury instruction was that it suggested that Wakeen could prevail on its copyright infringement claim if it proved access and substantial similarity regardless of whether Sirko independently created her work. However, this suggestion was not true under Seventh Circuit precedent, as Ashton could rebut the inference of copying stemming from a finding of access and substantial similarity by showing that Sirko independently created her work. See Ty, 132 F.3d at 1171. Therefore, Ashton has proved half of what it needs to prove in order to prevail on this claim--that the jury instructions did not adequately state the law of this Circuit.

   Ashton must lose on this claim, however,

because the erroneous jury instructions did not prejudice it. The fact that the district court recognized its error and eventually submitted the crucial third question to the jury meant that the jury was fully informed of the applicable legal principles, albeit in a less than ideal manner. After finding that Ashton had access to LMT and that Drummer was substantially similar to LMT, the jury was given a supplemental verdict form that asked it to answer a third question: "Do you find that Marlene Sirko copied plaintiff's copyrighted sculpture to create the sculpture that became defendant Ashton-Drake Galleries' Little Drummer Boy?" This question squarely addressed the independent creation defense because copying is the opposite of independent creation. See, e.g., Eisenschiml v. Fawcett Publ'ns, Inc., 246 F.2d 598, 603 (7th Cir. 1957). If the jury answered "no" to this question, Ashton would have prevailed. Therefore, although the jury instructions did not address independent creation, this principle was communicated to the jury via the supplemental verdict form, and the jury specifically found that Sirko did not independently create her work.

The evidence at trial and defense counsel's closing arguments also notified the jury that Ashton should prevail if Sirko independently created Drummer. See AIC Sec. Investigations, 55 F.3d at 1283. The majority of Ashton's case focused on independent creation. For example, it presented evidence that Sirko was an accomplished sculptor and that she used a 1990 photograph of a toddler as the model for her head that became Drummer. Further, three defense witnesses claimed that they saw Sirko using the photograph as her model, that they never saw the master skin of LMT in Sirko's studio, that they conferred with Sirko about certain features of her work, and that the likeness between Sirko's work and the photograph was obvious. This evidence helped notify the jury that Ashton's defense was that Sirko did not copy LMT, but rather, that she independently created her work.

During closing arguments, defense counsel argued: "If the Little Drummer Boy is an original creation of Marlene Sirko, the inquiry ends right there. If you find Marlene Sirko created,

independently created the Little Drummer Boy, you can go home, the case is over . . . ." Further, he stated: "Was this copy? Is this copyright infringement? The answer is no. Marlene Sirko created this doll. She created this with the inspiration of this child, a child she photographed in her son's nursery school in Germantown, Pennsylvania." These two comments conveyed to the jury that Ashton was relying, in part, on the independent creation defense and that if Sirko independently created her work, then she did not copy LMT.

   In sum, the jury instructions were erroneous in that they failed to explain that even if Wakeen proved access and substantial similarity, Ashton should prevail if Sirko independently created her work. However, the error in the instructions was cured by the fact that the evidence and arguments conveyed the independent creation defense to the jury and by the fact that the jury specifically found that Sirko did not independently create her work. Therefore, Ashton's "speculation that the jury might have decided the case differently if given the proper instruction is insufficient to establish prejudice." Gile, 213 F.3d at 375.

   On appeal, Ashton claims that the error in the jury instructions was compounded by events that occurred during closing arguments. During its closing argument, Ashton's counsel told the jury:

In fact, you are going to see a verdict form that says, "Do you find these heads substantially similar?" Well, if you believe, if you find that there was no copying done by Marlene Sirko, you are going to answer that question "No." I'm going to repeat that again to you before we are done, but if you should find that Marlene Sirko's work is an original creation of Marlene Sirko, that she did not copy Love Me Tender, that question in your jury form that says "Is there a substantial similarity," you have got to answer, you must answer that "No."

At that point, the district court judge interrupted and commented in the jury's presence: "Counsel, that's an incorrect statement, and I believe you know that, so I'll give them the law."

Ashton claims that the district court judge's comment was reversible error because it made its counsel seem deceitful and that its counsel was only trying to comply with the district court's erroneous instructions. In order to obtain a reversal, Ashton must show that the district court abused its discretion in supervising the closing arguments. See Trytko v. Hubbell, Inc., 28 F.3d 715, 727 (7th Cir. 1994). Whether LMT and Drummer were substantially similar and whether Sirko independently created her work were different propositions, see Ty, 132 F.3d at 1171, and it was not true that the jury should mark "no" to the substantial similarity question if it found that Sirko independently created her work. Therefore, the district court did not abuse its discretion by interrupting counsel because of this incorrect statement. See United States v. Briggs, 700 F.2d 408, 414 (7th Cir. 1983) (stating that a "federal judge has the right, and often the obligation, to interrupt the presentation of counsel in order to clarify misunderstandings"). Furthermore, the district court did not abuse its discretion by stating that Ashton's counsel knew it was misstating the law. See, e.g., Piepenburg v. Cutler, 649 F.2d 783, 792-93 (10th Cir. 1981) (declining to reverse where district court interrupted counsel's closing arguments and inferred that counsel intentionally misstated the law).

D.  Mistrial Motion

Ashton also argues that the erroneous jury instructions infected the process by which the jury considered the supplemental verdict form. It complains that the district court erred by failing to declare a mistrial because of the wording of the question on the supplemental verdict form, because of the timing of when the court gave the supplemental verdict form to the jury, and because the supplemental verdict form was not accompanied by clarifying instructions. Ashton bases its mistrial motion on the contention that "the deliberative process has been severely disrupted by reason of the piecemeal instruction to the jury." We review a denial of a mistrial motion for an abuse of discretion. See Raybestos Prods. Co. v. Younger, 54 F.3d 1234, 1239 (7th Cir.

1995).

Ashton complains that the language of the supplemental verdict form did not adequately notify the jury that the third question had to do with independent creation. The supplemental verdict form asked the jury: "Do you find that Marlene Sirko copied plaintiff's copyrighted sculpture to create the sculpture that became Ashton Drake Galleries' Little Drummer Boy?" Ashton argues that because this question did not mention the words "independent creation" and since it required a "no" answer to support Ashton, this question favored Wakeen. Ashton's argument is without merit because it drafted this very question and proffered it as a third interrogatory that the court should ask the jury. The district court chose to submit Ashton's interrogatory to the jury, and Ashton is in no position to challenge its adequacy. Moreover, Ashton told the jury during closing arguments that copying was the converse of independent creation.

Ashton also claims that the timing of the submission of the supplemental verdict form and the fact that it was not accompanied by clarifying instructions constitute reversible error. After the district court decided to submit a supplemental verdict form, it sought guidance with respect to when it should submit the third question to the jury-- before or after the jury had decided the first two questions. Neither party addressed this point, but Wakeen argued that the district court should accompany the supplemental verdict form with clarifying instructions telling the jury that it could infer copying from the same evidence that supported its findings of access and substantial similarity. Ashton responded to Wakeen's argument by stating that clarifying instructions were unnecessary because the jury instructions already mentioned that the jury could infer copying from proof of access and substantial similarity. The district court agreed with Ashton on this point and stated that it thought the best course of action would be to wait to submit the supplemental verdict form until the jury had returned its verdict with respect to the other two questions./2

Ashton claims that the manner in which

the supplemental verdict was submitted to the jury was reversible error because the jury did not know all of the issues that needed to be addressed from the outset. Ashton claims that the jurors were misled by the jury instruction that told the jury to find for Wakeen if it found access and substantial similarity. Therefore, it argues, by the time the jury had decided access and substantial similarity, the jury thought it had already decided the case in Wakeen's favor, and the supplemental verdict form was meaningless. While Ashton's proffered scenario is possible, it is also possible that the jury thought that the submission of the supplemental verdict form meant that the court was displeased with its answers to the first two questions. See Bonner v. Guccione, 178 F.3d 581, 591 (2d Cir. 1999) (stating that post-verdict interrogatory may lead "jury to infer that judge is conveying her unhappiness with the verdict"). However, Ashton's reliance on juror confusion is ill-founded given that it argued to the district court that clarifying instructions were not necessary.

The district court's denial of Ashton's mistrial motion was not an abuse of discretion. Ashton had the opportunity to advise the court on how to submit the supplemental verdict form to the jury, and the court did what Ashton asked it to do. Ashton drafted the third question, argued against clarifying instructions, and remained silent as to the timing issue. Further, on appeal, it has done nothing more than speculate that the jury was confused. The record, however, does not reveal that the jury was confused. The jury heard evidence and arguments pertaining to the two elements of the copyright infringement claim--access and substantial similarity--and to the issue of independent creation. The district court submitted three special interrogatories pertaining to each of these issues, and the jury deliberated for hours on each question before returning a verdict in Wakeen's favor on all three issues. While it was unfortunate that the district court erred in initially drafting the jury instructions, Ashton has not shown that any step of the deliberative process was reversible error.

E.  Attorney's Fees

Ashton's final argument is that the district court erred in awarding attorney's fees. The Copyright Act provides that "in its discretion," a district court may "award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. sec. 505. In utilizing its discretion to award attorney's fees under 17 U.S.C. sec. 505, a court should consider such non-exclusive factors as "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." Harris Custom Builders, Inc. v. Hoffmeyer, 140 F.3d 728, 730 (7th Cir. 1998) (quoting Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 n.19, 114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994)). Under this test, there is no precise rule or formula, but courts should apply the test in an even-handed manner, treating prevailing plaintiffs and prevailing defendants alike. Harris Custom Builders, 140 F.3d at 730 (quoting Fogerty, 510 U.S. at 534). A showing of bad faith or frivolousness is no longer required in order to receive attorney's fees. See Budget Cinema, Inc. v. Watertower Assocs., 81 F.3d 729, 731 (7th Cir. 1996). We will reverse a court's award of attorney's fees under 17 U.S.C. sec. 505 if the district court applied the wrong legal standard or abused its discretion. See id.

In its order, the district court found that the "deterrence" factor alone created a basis for awarding attorney's fees under 17 U.S.C. sec. 505, and awarded Wakeen $203,181.92 in fees. However, it offered no explanation of how this factor supported an award of attorney's fees. In fact, all that the district court's order said on this matter was, "[a]s to deterrence, the defendant says that it had stopped the infringement before trial and so did not need to be deterred, but this confuses specific deterrence--deterring this wrongdoer from its malfeasance--with general deterrence--deterring other potential wrongdoers from theirs." Then the district court concluded that it "would award attorney's fees to the plaintiff on deterrence grounds under Fogerty." The district court did not

indicate what behavior it was trying to deter, or how the "particular circumstances" in this case weighed in favor of awarding attorney's fees. Fogerty, 510 U.S. at 534 n.19.

Although we are aware that a district court may use its discretion to award fees under 17 U.S.C. sec. 505, we cannot determine how that discretion was exercised in this case. In Harris Custom Builders, 140 F.3d at 730-31, the court vacated and remanded an award of attorney's fees where the district court judge did not adequately explain the rea sons for granting the award. The court remanded the case to the district court judge for "his comments, which need not be extensive, on how his discretion [was] being exercised." Id. at 731; see Fasa Corp. v. Playmates Toys, Inc., 108 F.3d 140, 144 (7th Cir. 1997) (refusing to "read between the lines" of the judge's award of attorney's fees and vacating award and remanding case to district court so that it could elucidate the standard it was applying). While we make no judgment on whether the deterrence factor alone can support an award for attorney's fees--especially given that the district court's order was unpublished--we note that some explanation by the district court about its decision is necessary. If the district court purports to deter others from behaving as Ashton did, then it must explain what Ashton did that led to its award of attorney's fees.

The district court also purported to award attorney's fees as part of the costs under 28 U.S.C. sec. 1920. That statute lists six categories of "costs" that may be provided to the prevailing party as a matter of course, but attorney's fees are not a category that the statute lists. 28 U.S.C. sec. 1920. In a copyright action, fees are governed by 17 U.S.C. sec. 505, and any award of fees and non-taxable costs must come through it, and not through the general costs provisions of 28 U.S.C. sec. 1920. Cf. Fasa Corp., 108 F.3d at 144 (holding that the word "costs" is a term of art that does not normally encompass attorney's fees). Therefore, the district court erred in awarding attorney's fees as "costs" under 28 U.S.C. sec. 1920.

III.  Conclusion

We AFFIRM the district court's denial of Ashton's motion for judgment as a matter of law; denial of Ashton's motion for a new trial; and denial of Ashton's motion for mistrial. We VACATE the district court's award of attorney's fees and REMAND the issue for further action.

FOOTNOTES

/1 The instructions, as read to the jury, stated:

This is a copyright infringement case. The plaintiff Susan Wakeen Doll Company, Inc., claims that the defendant Ashton Drake Galleries infringed its copyright on a baby doll head sculpted by Susan Wakeen which the plaintiff named "Love Me Tender." The defendant denies infringing the copyright and claims that the sculpture is the independent, original creation of Marlene Sirko.

Copyright infringement exists when a defendant copies a work to which the plaintiff owns the copyright . . . . In order to determine whether defendant copied plaintiff's sculpture, you must determine whether Marlene Sirko had access to plaintiff's copyrighted sculpture. Access (as well as copying) may be inferred when a defendant's sculpture is so similar to plaintiff's sculpture that it is likely that the creator of defendant's sculpture copied plaintiff's sculpture. You may also conclude that Ms. Sirko had access to plaintiff's copyrighted sculpture if you find that plaintiff sent Ms. Sirko a copy of that sculpture and believe that Ms. Sirko saw plaintiff's sculpture.

If you conclude that Ms. Sirko had access to plaintiff's copyrighted sculpture you should find in favor of plaintiff Susan Wakeen Doll Company if you find that defendant's sculpture is substantially similar to plaintiff's copyright. Defendant's sculpture is "substantially similar" to plaintiff's copyright if an ordinary reasonable person, unless he or she set out to detect disparities between the plaintiff's and defendant's sculptures, would be disposed to overlook the disparities and regard their aesthetic appeal as the same. The two sculptures need not be identical for defendant's sculpture to infringe plaintiff's copyright. Differences in size, shape, color, or feel are not important if there are [sic] substantial similarity in the overall artistic expression.

/2 The court wanted to wait to submit the supplemental verdict form because if the jury answered "no" to either of the first two questions--indicating that Sirko did not have access to LMT or

that the two heads were not substantially simi-
lar--then Wakeen would have failed to prove its
prima facie case, and Ashton would have pre-
vailed. Therefore, it would have been moot wheth-
er Sirko had independently created her work.