Damir **GREEN**, Plaintiff–Appellant,

v.

Erick **HALLAM**, et al., Defendants–Appellees.

No. 03–2562.

United States Court of Appeals, Seventh Circuit.

Submitted July 20, 2004.*

Decided July 22, 2004.

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Damir Green, Tamms, IL, Plaintiff–Appellant Pro Se.

Catherine B. Weiler, Office of the Attorney General, Civil Appeals Division, Chicago, IL, for Defendants–Appellees.

Before BAUER, POSNER, and RIPPLE, Circuit Judges.

## ORDER

Damir Green, an inmate at Tamms Correctional Center, an Illinois maximum security prison, contends that a strip search that included a digital rectal search violated his rights under the Fourth and Eighth Amendments. He appeals the district court's grant of summary judgment for the defendants on his claim that the search violated his Fourth Amendment rights, and the district court's grant of judgment as a matter of law on his claim that the manner in which the search was conducted violated the Eighth Amendment.

Green claims that in August 1999 he was subjected to a digital rectal search, after a prison guard was injured while attempting to unlock his cuffs. The guards contended that they conducted the search to ensure Green did not have a weapon. Green claims that the search was performed "with unreasonable cause" and therefore violated his Fourth Amendment rights. He also claims that the search was conducted in an unreasonable manner in violation of the Eighth Amendment because the guards "ripped" off his clothes, "fondled" him, and performed a digital oral and anal

search with "dirty leather gloves" for the sole purpose of humiliation. The parties consented to have a magistrate judge preside over the proceedings.

The district court granted summary judgment to the defendants on Green's Fourth Amendment claim, concluding that prisoners do not have a Fourth Amendment interest in being free from strip searches. The court relied on *Johnson v. Phelan*, 69 F.3d 144, 150 (7th Cir.1995), and also cited *Peckham v. Wis. Dep't of Corrections*, 141 F.3d 694, 697 (7th Cir. 1998), noting that the Eighth amendment was "more properly positioned" to protect an Green from the search.

The court subsequently denied the defendant's motion to dismiss Green's claim that the search was conducted in a manner that violated the Eighth Amendment; the court said that Green might be able to prove that the guards used excessive force against him, and permitted Green to proceed to trial on that claim.

At trial Green testified to the following. On August 19, 1999, two officers arrived at his cell and took him to a holding cell where he awaited his "Prisoner Review Board" hearing. He was strip-searched, handcuffed behind his back, and shackled. He complained that the handcuffs were too tight and asked that they be removed, but neither officer would remove them. After forty minutes in the holding cell, he tried to relieve pain in his arms and shoulders and "stepped through" his handcuffs so that his hands were in front of him.

Approximately three hours later, Captain Erick Hallam noticed that Green had "stepped through" his handcuffs. Green sensed that Hallam was angry that he had "stepped through" the cuffs. Hallam ordered Green to place his hands through the cuffing port and began to unlock Green's cuffs. While unlocking his cuffs, Hallam noticed dental floss (contraband) that had been wrapped around his left wrist, and Green said that Hallam reacted violently by banging and twisting his cuffed right hand against the side of the cuffing port. Green said he responded in turn by "jerk[ing]" his right arm back inside the cuffing port "with all his might." (Tr. Vol. I at 96, 108.) During the scuffle, Hallam's hand was cut by the cuffs, and began bleeding.

Hallam closed the cuffing port and left to take care of his injury. Meanwhile, two other officers ordered Green to "cuff up." According to Green, the officers dragged him from the holding cell to a shower and ripped off his clothes, causing his shackles to cut into his ankles and wrists. Green testified that the officers then undertook an invasive search of his body:

> Officer Moore assisted me back to my feet. He was wearing a pair of dirty—black, leather dirty gloves. He proceeded to open my mouth up, lift—had me lift my tongue in the back and stuff[ed] and stick [sic] his fingers in my mouth, and then he went down to my genital area, search[ed] my genital area and lift[ed] my penis up and look[ed] under my feet and then he stuck his finger into my anus area.

(Tr. Vol. II at 39.)

After the search, Green was taken to the nurses' station. He told the nurse that he had been attacked by the guards. According to the nurse, Green complained of pain in his right shoulder, wrist, and ankle. She noted a small abrasion on Green's right ankle that was less then one inch, and not bleeding. She also noted that Green's right wrist was pink, but the skin was not broken. Green testified that he specifically told the nurse about the digital rectal search and that he was in pain, but that she did not examine his anal area. On cross examination, Green admitted that no record (either from the nurse's report that day or anytime thereafter) supported

his claim that he had complained of the digital rectal search or pain in his anal area. He testified that the absence of this detail from the nurse's report was due to the institution's "code of silence." (*Id.* at 55.) He showed scars to the jury that had developed on his wrists and ankles as a result of the shackles.

The defendants countered with testimony from the prison guards, who denied Green's claims about the degree of force they used and the extent of the search. For example, the officers that took him to the holding area testified that they had checked Green's handcuffs to ensure that they were not too tight, and that Green never complained to them that they were. In addition, the officers who performed the strip search testified that they performed only a visual anal cavity search, and that no digital rectal search occurred.

After extended deliberations the jury could not reach a verdict on whether the guards who conducted the strip search violated the Eighth Amendment. The district court, however, ultimately granted the defendants' motion for judgment as a matter of law, explaining that Green's injuries were *de minimis* because his injuries consisted merely of a "small abrasion on his ankle." (R. 106.)

We review *de novo* the district court's grant of summary judgment on Green's Fourth Amendment claim. *See Mattson v. Caterpillar, Inc.,* 359 F.3d 885, 888 (7th Cir.2004). Summary judgment is appropriate only where, viewing the facts and all reasonable inferences therefrom, no genuine issue as to any material fact remains, and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Mattson,* 359 F.3d at 888.

Green argues on appeal that the district court improperly granted summary judgment because the guards strip searched him in a "malicious and sadistic" manner in violation of the Fourth Amendment. He does not contend that the prison officials lacked cause to perform the search, but asserts that the Fourth Amendment protects him from digital rectal searches performed in an unreasonable manner. *See Peckham,* 141 F.3d at 697 (stating that a prison inmate does "enjoy" some "protection" under the Fourth Amendment); *Del Raine v. Williford,* 32 F.3d 1024, 1039 (7th Cir.1994) (stating that a digital rectal search "falls under both the constitutional protections of the Fourth Amendment and the Eighth Amendment").

Although prisoners do not forfeit all constitutional protection because of their confinement, some rights are necessarily withdrawn as a result of incarceration. *Hudson v. Palmer,* 468 U.S. 517, 524, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Wolff v. McDonnell,* 418 U.S. 539, 555–56, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). In determining whether a particular search is reasonable under the Fourth Amendment, courts weight the prison's need for the search against the invasion of personal rights the search entails. *See Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Prison officials are in the best position to determine what is required to manage prisons, and therefore they are afforded "wide-ranging deference" in evaluating what is necessary to preserve order and discipline. *Id.* at 559 (holding that pretrial detainees have no right to privacy in the viewing of their naked bodies, including body cavities).

The district court properly granted summary judgment on Green's Fourth Amendment claim because the search was a reasonable means of allaying prison guards' concerns that Green might be hiding weapons that could cause injury. Given the broad discretion afforded prison officials in prison management, this court will not second-guess the reasonableness of the prison's need to conduct a search

under the circumstances. *See Peckham,* 141 F.3d at 697. Even if there remains some Fourth Amendment protection in the prison context, *compare id.; Del Raine,* 32 F.3d at 1039–40, *with Johnson,* 69 F.3d at 150 (holding that prisoners have no Fourth Amendment rights), there was no Fourth Amendment violation here because Green submitted no evidence to challenge the prison's explanation that the guards had reasonable cause to search Green based on the fact that Green possessed contraband, refused to cooperate, and injured a guard. *See also Vaughan v. Ricketts,* 950, F.2d 1464, 1468–69 (9th Cir.1988) (holding that under the Fourth Amendment prison officials must have reasonable cause to search an inmate). In any case, "regardless of how one views the Fourth Amendment in this context, it is the Eighth Amendment that is more properly posed to protect inmates from unconstitutional strip searches." *Peckham,* 141 F.3d at 697.

■ Regarding the Eighth Amendment, Green argues that the district court erred in granting judgment as a matter of law because the search was done in a manner that violated the Eighth Amendment because it was conducted maliciously, without any penological purpose, by non-medical professionals, with a "dirty" leather glove, and caused permanent scars. Judgment as a matter of law was appropriate on Green's Eighth Amendment claim only if no rational jury could have found for Green, *see* Fed R. Civ. P. 50(b); *Susan Wakeen Doll Co., v. Ashton–Drake Galleries,* 272 F.3d 441, 449 (7th Cir.2001), or if the evidence in its totality, viewed in the light most favorable to Green, was insufficient to support the verdict, *see Mathur v. Bd. of Trs. of S. Ill. Univ.,* 207 F.3d 938, 942 (7th Cir.2000). We review *de novo* the district court's grant of judgment as a matter of law. *Susan Wakeen Doll Co.,* 272 F.3d at 449. Reversal is appropriate only when there is "more than a mere scintilla of evidence" to support the moving party's case. *Zimmerman v. Chicago Bd. of Trade,* 360 F.3d 612, 623 (7th Cir.2004).

The Eighth Amendment's prohibition on cruel and unusual punishment protects prisoners from the "unnecessary and wanton infliction of pain" that is "totally without penological justification." *Hope v. Pelzer,* 536 U.S. 730, 737, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (citations omitted). Only "calculated harassment" or "maliciously motivated" conduct that is unrelated to institutional security is considered unconstitutional. *Whitman v. Nesic,* 368 F.3d 931, 934 (7th Cir.2004). Preventing drugs and weapons that can be smuggled through the alimentary canal or hidden in the rectal cavity is a legitimate penological concern. *Wolfish,* 441 U.S. at 559; *Johnson,* 69 F.3d at 146. Digital rectal searches are a legitimate means of maintaining order and do not violate the Eighth Amendment as long as they are conducted in a reasonable manner. *Del Raine,* 32 F.3d at 1039–42 (upholding reasonableness of digital rectal search against Eighth Amendment challenge because there was no evidence that officials undertook search in "malicious and sadistic fashion for the very purpose of causing harm") (citations omitted).

■ The Eighth Amendment does not protect Green against the digital rectal search because no rational juror could find that the search was conducted in a malicious manner, or for some motive other than the maintenance of prison order and safety. Green does not contest the guards' claim that he violated prison rules by stepping through his handcuffs, possessing contraband dental floss, and injuring Captain Hallam by "pulling away" as Hallam unlocked his cuffs; the prison guards' interest in maintaining order and security therefore justified the search.

■ Green argues that the prison violated the Eighth Amendment when a

guard used a "dirty glove," to conduct the digital rectal search. An unsanitary digital body cavity search could constitute a violation of the Eighth Amendment. *See Bonitz v. Fair*, 804 F.2d 164, 169 (1st Cir.1986) (holding that defendants were not entitled to qualified immunity where officers conducted oral, anal and vaginal digital searches of inmates "without changing their gloves during a search of an inmate or between searches of different inmates") *overruled on other grounds in Unwin v. Campbell*, 863 F.2d 124 (1988); *Vaughan v. Rickets*, 859 F.2d 736, 741 (9th Cir.1988) (affirming denial of summary judgment motion where searches were conducted on unsanitary tables in open hallway by non-medical professionals who did not wash their hands between searches). But Green's conclusory statement that the glove was "dirty" is inadequate evidence to sustain his burden to show that the conditions of the search were unsanitary. *See Zimmerman*, 360 F.3d at 623, 629.

▮ Green's contention that an injury that causes scarring cannot be *de minimis* also fails. This circuit has found similar injuries *de minimis*. *See Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir.2004) (bruise that did not require medical attention was *de minimis* injury); *Outlaw v. Newkirk*, 259 F.3d 833, 839 (7th Cir.2001) (pain, swelling, and bruising to prisoner's hand as a result of injury involving cuff-port were *de minimis* ). The district court correctly granted judgment as a matter of law on the basis that Green's injuries to his wrists and ankles were *de minimis*.

Because Green's Eighth Amendment claim fails, the district court was also correct in finding that the guards who observed the search are not liable for their failure to intervene. *See Fillmore*, 358 F.3d at 506; *Chavez v. Ill. State Police*, 251 F.3d 612, 652 (7th Cir.2001).

AFFIRMED.