NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 2, 2008[*]
Decided October 7, 2008

**Before**

JOEL M. FLAUM, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

No. 08-1667

| | |
|---|---|
| CHITUNDA TILLMAN, SR., | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Northern District of |
| | Illinois, Eastern Division. |
| *v.* | |
| | No. 05 C 910 |
| NEW LINE CINEMA CORPORATION, | |
| et al., | Matthew F. Kennelly, |
| *Defendants-Appellees*. | *Judge*. |

**O R D E R**

In this action for copyright infringement, Chitunda Tillman claims that New Line Cinema Corporation and its parent company produced the Denzel Washington movie *John Q.* from a script filched from Tillman's own screenplay, *Kharisma Heart of Gold*. The district court granted summary judgment for the defendants, and Tillman appeals. Like the

---

[*]After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

district court, we detect no pertinent similarities between the screenplays, which should not be surprising because New Line's undisputed evidence establishes that *John Q.* was written five years before Tillman's work. Accordingly, we affirm the judgment.

The district court's thorough decision sets out fuller summaries of the two works; we offer only the basic plot lines here. Tillman's screenplay, written and copyrighted in 1998, is based in part on his own struggle to secure medical care for his son. The script tells the story of Tune Love, a millionaire whose assets are frozen by the IRS just when he needs $600,000 to pay for critical heart surgeries for his newborn daughter, Kharisma. When all seems lost, Tune happens to be eating lunch at the mall food court and witnesses a robbery in progress. Tune intervenes and knocks the two robbers unconscious, but not until they have shot his sandwich out of his hands. During this interlude Tune devises a plan: he will insure his life for $3.5 million and then commit suicide so that his family can pay for Kharisma's surgery with the proceeds. After securing his life insurance policy and saying goodbye to his family, Tune drives off a cliff while R. Kelly's *Trade in My Life* plays in the background. The script closes with Tune's spirit visiting a healthy Kharisma five years after her successful surgeries.

In 2002 New Line released *John Q.*, the tale of factory laborer John Q. Archibald who is struggling to make ends meet when tragedy strikes and his son, Mikey, collapses from a heart disorder requiring a transplant. The hospital refuses to perform Mikey's transplant because the family's health insurance will not cover the procedure, and John cannot afford to pay out of pocket. Hopeless, John takes everyone in the hospital waiting room hostage in an effort to force the hospital to perform Mikey's surgery. The story reaches its climax as John turns his gun on himself in a selfless attempt to give his own heart to Mikey, but—as so often happens in the movies—John's gun jams and he is apprehended by authorities. Although the hospital saves Mikey's life by agreeing to perform the surgery, the law holds John accountable and the movie ends with John being driven off to prison as his young son looks on.

Tillman saw the movie and believed it was copied from *Kharisma Heart of Gold*. He investigated the production of *John Q.* and concluded that screenwriter James Kearns, a member of the Writers Guild of America West, had read and stolen *Kharisma Heart of Gold* after Tillman registered it with the Guild. In February 2005 Tillman filed a complaint in district court for copyright infringement against New Line, parent company Time Warner Inc., employees of both companies, and Kearns. Two months later, after retaining counsel, Tillman amended his complaint, adding new claims and several additional defendants including the Writers Guild and several of its officers. The district court dismissed the claims against the individual defendants and the Guild for lack of personal jurisdiction.

The court then whittled the complaint down to its essential claim of copyright infringement, dismissing Tillman's newly added claims for failure to state a claim.

For purposes here we refer to the surviving defendants as New Line. New Line moved for summary judgment, arguing that the scripts are not alike and that Kearns could not have stolen Tillman's script because he wrote *John Q.* in 1993—five years before *Kharisma Heart of Gold.* Along with the two scripts, New Line submitted a declaration from Kearns stating that he wrote *John Q.* in 1993 and then sold the script to Island World Productions. New Line also submitted the purchase contract and the declaration of Island World's senior vice-president confirming that the company bought Kearns's screenplay in 1993. Finally, New Line submitted several articles published in 1993 discussing Kearns's screenplay, *John Q.* Tillman, proceeding pro se again, responded not with contrary evidence, but by accusing New Line of falsifying its documentary evidence. The district court sided with New Line and specifically noted that Tillman's claim rests on similarities between unprotected ideas rather than expressions.

On appeal Tillman abandons all but his copyright claim against New Line.[1] We review the district court's grant of summary judgment de novo, construing all disputed facts in favor of Tillman as the non-moving party. *See JCW Invs., Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir. 2007). To sustain a claim of copyright infringement, the plaintiff must prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). The parties agree that Tillman holds a valid copyright in *Kharisma Heart of Gold.* Therefore, the key inquiry is whether Tillman could establish that *John Q.* was copied from his work. Copying may be established via direct evidence, or may be inferred "'where the defendant had access to the copyrighted work and the accused work is substantially similar to the copyrighted work.'" *Susan Wakeen Doll Co., v. Ashton-Drake Galleries*, 272 F.3d 441, 450 (7th Cir. 2001) (quoting *Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp.*, 672 F.2d 607, 614 (7th Cir.1982)).

---

[1] Tillman argues for the first time in his reply brief that the district court erroneously dismissed his claims against the Writers Guild and several individual defendants for lack of personal jurisdiction. Because this argument was not made in his main brief it is waived. *See R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs*, 335 F.3d 643, 651 (7th Cir. 2003). But even if this question was properly before us, we would conclude that the district court correctly dismissed Tillman's suit against the individual defendants for lack of personal jurisdiction. *See Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 549-51 (7th Cir. 2004).

Where no reasonable juror could find that two works are substantially similar, summary judgment in favor of the alleged infringer is appropriate. *See Oravec v. Sunny Isles Luxury Ventures*, L.C., 527 F.3d 1218, 1227 (11th Cir. 2008); *Stromback v. New Line Cinema*, 384 F.3d 283, 297-99 (6th Cir. 2004). That is the situation here. Tillman lists perceived similarities between the two scripts. For example, he notes that both scripts include sick children, caring fathers, hospital nurses, a beeping heart monitor, the lack of health insurance, praying, crying, and expressions such as "Don't Shoot!" and "It's a miracle." But these are generic similarities far removed from the realm of protected expression. *See Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1257-62 (11th Cir. 1999) ("A court may grant summary judgment for defendant as a matter of law if the similarity between the two works concerns only noncopyrightable elements of the plaintiff's work *or* if no reasonable jury would find that hte two works are substantially similar."). The central characters, theme, and plot in *John Q.* differ markedly from those in *Kharisma Heart of Gold*, and thus the district court properly reasoned that the scripts are not substantially similar. *See Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1078-81 (9th Cir. 2006) (holding that, as a matter of law, scripts were not substantially similar where there were differences in plot, characters, themes, mood, pace, dialogue, and sequence of events); *Grosso v. Miramax Film Corp.*, 383 F.3d 965, 967 (9th Cir. 2004) (holding that common setting of poker game and use of poker jargon in both works did not make the works substantially similar); *Cavalier v. Random House, Inc.*, 297 F.3d 815, 823-25 (9th Cir. 2002) (holding that two stories of talking moons were not substantially similar where pace, dialogue, mood, and theme were different). And any similarities between the two scripts, such as the leading character being a concerned father willing to do anything for his sick child, are standard elements known as *scènes à faire* that are unprotected under copyright law. *See JCW Invs.*, 482 F.3d at 915; *Gaiman v. McFarlane*, 360 F.3d 644, 659-60 (noting that "stock" characters such as a drunken old bum, are unprotected *scènes à faire*).

That the two scripts are dissimilar is not surprising given the uncontroverted evidence that Kearns *could not* have copied Tillman's script because *John Q.* was written *five years* before *Kharisma Heart of Gold*. The district court reasoned that this evidence established that *John Q.* was independently created and rebutted an inference of copying. *See JCW Invs.*, 482 F.3d at 915; *Susan Wakeen Doll Co.*, 272 F.3d at 450. But here Tillman has not established an inference of copying, and really this is just further proof that Kearns did not copy Tillman's script. *See Armour v. Knowles*, 512 F.3d 147, 153-54 (5th Cir. 2007) (holding that district court properly granted summary judgment for defendants where copyright holder admitted writing song after defendants wrote allegedly similar song). Tillman's unsubstantiated assertions that New Line fabricated testimony, legal documents, and news articles showing that *John Q.* predates his own screenplay are not sufficient to create a triable issue of material fact. *See Petts v. Rockledge Furniture LLC*, 534 F.3d 715, 722-

23 (7th Cir. 2008).  And therefore the district court properly granted summary judgment in favor of New Line.

AFFIRMED.